Law Offices of
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, New York 10178
(212) 309-6000
*Attorneys for Defendant*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------------x

| | |
|---|---|
| KRISTIN RIGHTNOUR, | : |
| | : |
| Plaintiff, | : |
| | : |
| -against- | :  1:16-cv-03527 |
| | : |
| TIFFANY AND COMPANY, | : |
| | : |
| Defendant. | : |

-----------------------------------------------------------------------x

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
<u>**MOTION TO COMPEL ARBITRATION AND STAY THIS ACTION**</u>

MORGAN, LEWIS & BOCKIUS LLP
Melissa C. Rodriguez

101 Park Avenue
New York, NY 10178
Tel.: (212) 309-6000
Fax: (212) 309-6001

*Attorneys for Defendant*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................... 1

RELEVANT FACTUAL BACKGROUND .................................................. 2

ARGUMENT ............................................................................................... 3

I.      RIGHTNOUR SHOULD BE COMPELLED TO ARBITRATE HER CLAIMS. ........... 3

      A.     A MOTION TO COMPEL IS THE PROPER APPLICATION WHEN A LITIGANT REFUSES TO PROCEED IN ARBITRATION. ............................... 3

      B.     THE FEDERAL ARBITRATION ACT AND SUPREME COURT AND SECOND CIRCUIT AUTHORITY REQUIRE THIS COURT TO ENFORCE THE ARBITRATION AGREEMENT. ............................................ 4

            1.     Rightnour Entered Into A Valid Agreement To Arbitrate. ...................... 4

            2.     Rightnour's Claims Clearly Fall Within the Scope Of The Arbitration Agreement. ............................................................... 9

            3.     Congress Intended Rightnour's Claims To Be Arbitrable ........................ 9

II.     CONTROLLING PRECEDENT AND STRONG PUBLIC POLICY REQUIRE THAT ARBITRATION AGREEMENTS BE ENFORCED ACCORDING TO THEIR TERMS. ..................................................................... 11

III.    A STAY IS PROPER BECAUSE ALL OF RIGHTNOUR'S CLAIMS IN THIS ACTION ARE SUBJECT TO ARBITRATION. ............................................ 13

CONCLUSION ............................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

*AT&T Mobility LLC v. Concepcion,*
    131 S. Ct. 1740 (2011) ..............................................................................................11

*AT&T Techs., Inc. v. Commc'ns Workers of Am.,*
    475 U.S. 643 (1986) ..................................................................................................11

*Bassett v. Electronic Arts, Inc.,*
    93 F. Supp. 3d 95 (E.D.N.Y. 2015) .........................................................................7

*Beletsis v. Credit Suisse First Boston, Corp.,*
    No. 01-6266, 2002 WL 2031610 (S.D.N.Y. Sept. 4, 2002) ....................................8

*Bell v. Cendant Corp.,*
    293 F.3d 563 (2d Cir. 2002) ...................................................................................12

*Berkley v. Dillard's Inc.,*
    450 F.3d 775 (8th Cir. 2006) ....................................................................................7

*Boule v. Credit One Bank,*
    No. 15-8562, 2016 WL 3015251 (S.D.N.Y. May 11, 2016) ....................................4

*Brown v. The St. Paul Travelers Cos.,*
    559 F. Supp. 2d 288 (W.D.N.Y. 2008) .................................................................6, 9

*Buchman v. Weiss,*
    No. 08-5453, 2009 WL 2044615 (S.D.N.Y. July 15, 2009) .................................4, 5

*Circuit City Stores, Inc. v. Adams,*
    532 U.S. 105 (2001) ..................................................................................................5

*Clarendon Nat. Ins. Co. v. Lan,*
    152 F. Supp. 2d 506 (S.D.N.Y. 2001) (Koeltl, J.) ..................................................4

*Cohen v. UBS Fin. Servs., Inc.,*
    799 F.3d 174 (2d Cir. 2015) ...................................................................................12

*CompuCredit Corp. v. Greenwood,*
    132 S. Ct. 665 (2012) ...........................................................................................4, 11

*Couch v. AT&T Serv., Inc.,*
    No. 13-2004, 2014 WL 7424093 (E.D.N.Y. Dec. 31, 2014) ....................................6

*Dean Witter Reynolds, Inc. v. Byrd,*
    470 U.S. 213 (1985) ..................................................................................................3

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Desiderio v. NASD*,
    191 F.3d 198 (2d Cir. 1999) ................................................................. 10

*DuBois v. Macy's East Inc.*,
    338 F. App'x 32 (2d Cir. 2009) .............................................................. 5

*Fletcher v. Kidder, Peabody & Co.*,
    81 N.Y.2d 623 (1993) ......................................................................... 10

*Genesco, Inc. v. T. Kakiuchi & Co.*,
    815 F.2d 840 (2d Cir. 1987) .................................................................. 9

*George v. LeBeau*,
    455 F.3d 92 (2d Cir. 2006) .................................................................... 4

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991) ............................................................................ 10

*Gold v. Deutsche Aktiengesellschaft*,
    365 F.3d 144 (2d Cir. 2004) ............................................................. 5, 10

*Gonzalez v. Toscorp Inc.*,
    No. 97-8158, 1999 WL 595632 (S.D.N.Y. Aug. 5, 1999) ......................... 7

*Green Tree Fin. Corp. v. Bazzle*,
    539 U.S. 444 (2003) .......................................................................... 11

*Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*,
    246 F.3d 219 (2d Cir. 2001) ................................................................ 11

*Int'l Ass'n of Machinists & Aerospace Workers v. Gen. Elec. Co.*,
    406 F.2d 1046 (2d Cir. 1969) .............................................................. 13

*Johnson v. Tishman Speyer Properties, L.P.*,
    No. 09-1959, 2009 WL 3364038 (S.D.N.Y. Oct. 16, 2009) ..................... 10

*Katz v. Cellco Partnership*,
    794 F. 3d 341 (2d Cir. 2015) ............................................................... 13

*Love v. BMW Financial Services NA, LLC*,
    No. 15-124, 2016 WL 259710 (E.D.N.Y. Jan. 21, 2016) ......................... 13

*Manigault v. Macy's East, LLC*,
    318 F. App'x 6 (2d Cir. 2009) ............................................................ 5, 6

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Marciano v. DCH Auto Grp.*,
  14 F. Supp. 3d 322 (S.D.N.Y. 2014) .........................................................................7

*Nulife Entertainment, Inc. v. Torres*,
  698 F. Supp. 2d 409 (S.D.N.Y. 2010) ........................................................................4

*Philippe v. Red Lobster Restaurants LLC*,
  No. 15-2080, 2015 WL 4617247 (S.D.N.Y. Aug. 3, 2015) ......................................13

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
  388 U.S. 395 (1967) ...................................................................................................9

*Roberts v. Atlantic Recording Corp.*,
  No. 95-3524, 1995 WL 386552 (S.D.N.Y. June 29, 1995) .....................................12

*S.A. Mineracao Da Trindade-Samitri v. Utah Int'l, Inc.*,
  745 F.2d 190 (2d Cir. 1984)......................................................................................13

*Scherk v. Alberto-Culver Co.*,
  417 U.S. 506 (1974) ...................................................................................................3

*Scott v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  No. 89-3974, 1992 WL 245506 (S.D.N.Y. Sept. 14, 1992) ....................................10

*Shearson/Am. Express, Inc. v. McMahon*,
  482 U.S. 220 (1987)...................................................................................................10

*Siderugica Del Orinoco (Sidor), C.A. v. Linea Naviera De Cabotaje, C.A.*,
  No. 99-0075, 1999 WL 632870 (S.D.N.Y. Aug. 19, 1999)......................................6

*Stern v. Espeed, Inc.*,
  No. 06-958, 2006 WL 2741635 (S.D.N.Y. Sept. 22, 2006) ......................................7

*Transp. Workers Union of Am. v. Veolia Transp. Servs., Inc.*,
  24 F. Supp. 3d 223 (E.D.N.Y. 2014) .......................................................................12

*Tuskey v. Volt Info. Scis., Inc.*,
  No. 00-741, 2001 WL 873204 (S.D.N.Y. Aug. 3, 2001).........................................7

*Waumboldt v. Callimanopulos*,
  No. 11-7416, 2012 WL 3589423 (S.D.N.Y. Aug. 20, 2012)..................................10

*Wework Companies Inc. v. Zoumer*,
  No. 16-457, 2016 WL 1337280 (S.D.N.Y. Apr. 5, 2016) ........................................5

**TABLE OF AUTHORITIES**

(continued)

**Page(s)**

*Wire Serv. Guild v. United Press Int'l, Inc.*,
   623 F.2d 257 (2d Cir. 1980)....................................................................................13

**FEDERAL STATUTES**

9 U.S.C. § 1, *et seq*............................................................................................ passim

9 U.S.C. § 2.........................................................................................................5

42 U.S.C. § 2000(e) .............................................................................................1

## PRELIMINARY STATEMENT

Defendant Tiffany and Company ("Tiffany" or the "Company") respectfully submits this memorandum of law in support of its motion to compel Kristin Rightnour ("Rightnour" or "Plaintiff") – who is bound by a Dispute Resolution Agreement with an arbitration provision (the "Arbitration Agreement" or "Agreement") requiring her to arbitrate all of the claims raised in this action – to submit her claims to individual arbitration pursuant to the requirements of the Federal Arbitration Act ("FAA").   For the reasons set forth below, Defendant's motion should be granted in its entirety.

Rightnour was employed by Tiffany from October 2013 to August 2015.  She received the Arbitration Agreement in February 2015.  Through her continued employment following receipt of the Agreement, Rightnour agreed to its terms, which require her to individually arbitrate all claims that arise out of her employment with Tiffany.  Despite this clear directive, Rightnour filed an action in this Court alleging claims of religious discrimination and retaliation, directly arising out of her employment with Tiffany, and requests a trial by jury on those claims.  *See* Complaint at Docket ("Dkt.") No. 1.[1]  As demonstrated below, however, all of Plaintiff's claims are subject to the binding and enforceable Arbitration Agreement and, therefore, should be compelled to arbitration and this action should be stayed pending arbitration of those claims.

---

[1] Rightnour specifically alleges claims for discrimination and retaliation in violation of 42 U.S.C. § 2000(e) ("Title VII"), the New York State Human Rights Law ("NYSHRL"), N.Y. Executive Law §§ 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y. City Administrative Code §§8-101 *et seq.  See* Complaint, Dkt. 1.

## RELEVANT FACTUAL BACKGROUND

Rightnour was hired by the Company in October 2013, as the Director of Marketing – Fashion Category for North America.  *See* Complaint (Dkt. No. 1) at ¶ 12.  As a condition of her continued employment, Rightnour voluntarily entered into a mutual agreement to arbitrate all employment claims and waived her right to a jury trial.  *See* Arbitration Agreement, attached to the Declaration of Melissa C. Rodriguez (the "Rodriguez Decl.") as Exhibit ("Ex.") 1.  Specifically, Tiffany records make clear that the Arbitration Agreement was delivered to and received by Rightnour (and other Company employees) via email on February 27, 2015.  During the next few months, Rightnour received no less than ten emails reminding her of the obligations under the Agreement and providing a link to the Agreement itself.  *See* Ex. 2 to Rodriguez  Decl. The Agreement expressly provides:

> This Agreement requires arbitration of legal disputes between you and Tiffany and Company (the "Company") arising out of or relating to your employment or the termination of employment…**[C]ontinuing your employment after receipt of this Agreement constitutes mutual acceptance of the terms of this Agreement by you and the Company.**

Arbitration Agreement at p. 1 (emphasis added).  The Agreement sets forth the terms and conditions governing the resolution of numerous covered claims, including:

> [L]egal disputes arising out of or relating to the employment relationship or the termination of that relationship…and state statutes, if any, addressing the same or similar subject matters, and all other state and federal statutory and common law claims.

*Id.* The Agreement also encouraged Rightnour "to consult with counsel of [her] choice" on the terms of the Agreement.  *Id.*  Accordingly, by continuing her employment with the Company for several months after receiving the Agreement, Rightnour became bound by its express terms. *Id.*

2

Notwithstanding the foregoing, on May 11, 2016, Rightnour filed the Complaint, through which she is now attempting to litigate in this Court claims that are covered by her Arbitration Agreement.  *See* Dkt. No. 1.  Because the allegations in the Complaint revolve entirely around allegations of discrimination and retaliation related to Rightnour's employment with Tiffany, which are expressly covered by the Arbitration Agreement, all of Rightnour's claims  must be arbitrated.

## ARGUMENT

### I.   RIGHTNOUR SHOULD BE COMPELLED TO ARBITRATE HER CLAIMS.

Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*., Rightnour should be ordered to submit her claims to arbitration in accordance with the Agreement's provisions. As explained below, her claims fall squarely within the scope of the disputes that the parties agreed would be determined solely by an arbitrator – and not by a court.

### A.   A MOTION TO COMPEL IS THE PROPER APPLICATION WHEN A LITIGANT REFUSES TO PROCEED IN ARBITRATION.

A motion to compel arbitration is governed by Section 4 of the FAA, which provides that "[a] party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.  *See also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985) (holding that the FAA leaves no room for the exercise of discretion and mandates that a district court direct the parties to proceed to arbitration on issues within the scope of an arbitration agreement); *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974) ("[Section] 4 of the [FAA] directs a federal court to order parties to proceed to arbitration if there has been a 'failure, neglect, or refusal' of any party to honor an agreement to arbitrate").  When a litigant in a court proceeding refuses to arbitrate a dispute within

the scope of a valid arbitration agreement, a judicial order compelling arbitration is mandatory. Despite agreeing to arbitrate her claims, Rightnour has opted to commence litigation in this Court. Accordingly, a judicial order compelling arbitration should be issued.

**B.  THE FEDERAL ARBITRATION ACT AND SUPREME COURT AND SECOND CIRCUIT AUTHORITY REQUIRE THIS COURT TO ENFORCE THE ARBITRATION AGREEMENT.**

In determining whether a dispute involving statutory claims is arbitrable, a court must decide three questions:  (1) whether there exists a valid agreement to arbitrate; (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement; and (3) whether Congress intended the claims to be nonarbitrable.   *Boule v. Credit One Bank*, No. 15-8562, 2016 WL 3015251, at *2 (S.D.N.Y. May 11, 2016); *Nulife Entertainment, Inc. v. Torres*, 698 F. Supp. 2d 409, 413 (S.D.N.Y. 2010) (Koeltl, J.).  In deciding these questions, "courts must 'construe arbitration clauses as broadly as possible,' and resolve 'any doubts concerning the scope of arbitral issues…in favor of arbitration.'" *Buchman v. Weiss*, No. 08-5453, 2009 WL 2044615, at *3 (S.D.N.Y. July 15, 2009) (internal citations omitted); *Clarendon Nat. Ins. Co. v. Lan*, 152 F. Supp. 2d 506, 514 (S.D.N.Y. 2001) (Koeltl, J.).  Under this test, the strong federal policy favoring arbitration requires that Rightnour be compelled to arbitrate all of her claims.  *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012).

**1.  Rightnour Entered Into A Valid Agreement To Arbitrate.**

Courts should apply "ordinary state-law principles that govern the formation of contracts" to determine whether parties have a valid agreement to arbitrate. *George v. LeBeau*, 455 F.3d 92, 94 (2d Cir. 2006).  Here, the parties' agreement is governed by the

FAA[2] and insofar as state law applies, it is governed by New York law.  *See* Rodriguez Decl. Ex. 1.  Thus, whether a valid agreement to arbitrate exists here is governed by New York contract law, which requires that there be "an offer, acceptance, consideration, mutual assent and intent to be bound."  *Wework Companies Inc. v. Zoumer*, No. 16-457, 2016 WL 1337280, at *4 (S.D.N.Y. Apr. 5, 2016).   Further, a contract may be formed by words or by conduct that demonstrates mutual assent, and an employee will be deemed to have assented to an arbitration agreement by continuing to work after receiving notice of the agreement. *See DuBois v. Macy's East Inc.*, 338 F. App'x 32, 33 (2d Cir. 2009); *Manigault v. Macy's East, LLC*, 318 F. App'x 6, 8 (2d Cir. 2009).   Under New York law, an agreement to arbitrate "need only be proven by a preponderance of the evidence."  *Buchman*, 2009 WL 2044615, at *3 (citing *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela,* 991 F.2d 42, 46 (2d Cir. 1993)).

Here, the incontrovertible evidence establishes that Rightnour entered into a valid arbitration agreement by continuing her employment after having received notice that the Agreement would become effective through continued employment "regardless of whether [she submitted] the acknowledgment."  Arbitration Agreement at p. 1.  Indeed, Rightnour cannot dispute that she received the Arbitration Agreement on February 27, 2015, together

---

[2] The FAA provides, in relevant part, that "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . <u>shall</u> <u>be</u> <u>valid</u>, <u>irrevocable</u> <u>and</u> <u>enforceable</u>."  9 U.S.C. § 2 (emphasis added).  *See also Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111-12 (2001); *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 150 (2d Cir. 2004).  It cannot be legitimately disputed that Rightnour entered into a valid, irrevocable and enforceable agreement to arbitrate all of her claims in the Complaint.

with notice that her "**CONTINUED EMPLOYMENT AFTER RECEIPT OF THIS AGREEMENT CONSTITUTES YOUR AND THE COMPANY'S MUTUAL ACCEPTANCE OF THIS AGREEMENT**."   Agreement at p. 5.[3] (emphasis in the original).  Under New York law, these facts establish that Rightnour accepted and became bound by the Agreement by continuing her employment after February 27, 2015.

It is well-established Second Circuit law that "a party may be bound by an agreement to arbitrate even in the absence of a signature."  *See e.g., Manigault,* 318 F. App'x at 8 (holding that under New York law, notice and continued employment constitutes acceptance of an arbitration agreement, regardless of whether the employee signed an acknowledgment form); *Siderugica Del Orinoco (Sidor), C.A. v. Linea Naviera De Cabotaje, C.A.*, No. 99-0075, 1999 WL 632870, at *5 (S.D.N.Y. Aug. 19, 1999) (noting that a written agreement required under the FAA need not be signed to be enforceable); *Brown v. The St. Paul Travelers Cos.*, 559 F. Supp. 2d 288, 291 (W.D.N.Y. 2008) ("[W]hile there is no signed acknowledgment of plaintiff's receipt of the handbook [containing the terms of the agreement], ... plaintiff was advised that compliance with the arbitration policy was a condition of continued employment, she was advised that it was her responsibility to 'read and understand' all of the company policies including the arbitration policy, and she continued her employment with defendant.").  *See also Couch v. AT&T Serv., Inc.*, No. 13-2004, 2014 WL 7424093 (E.D.N.Y. Dec. 31, 2014) (enforcing an arbitration agreement, even

_____

[3] Nor can she dispute that (1) the Arbitration Agreement is a mutual agreement to arbitrate that is governed by the FAA, (2) that the Arbitration Agreement expressly provided that "Arbitration is a mandatory condition of your employment with the Company," or (3) that the Agreement expressly stated, "You have the right to consult with counsel of your choice concerning any aspect of, or any claim that may be subject to, this Agreement." Arbitration Agreement at pp. 1, 4.

where it was by email and not signed, based on plaintiff's continued employment with defendant).

Continued employment also serves as legal consideration for the Arbitration Agreement, as does the parties' mutual agreement to arbitrate. *See Tuskey v. Volt Info. Scis., Inc.*, No. 00-741, 2001 WL 873204, at *4 (S.D.N.Y. Aug. 3, 2001). *See also Stern v. Espeed, Inc.*, No. 06-958, 2006 WL 2741635, at *2 (S.D.N.Y. Sept. 22, 2006) ("[C]ontinuation of employment alone is sufficient consideration to enforce" an arbitration agreement); *Bassett v. Electronic Arts, Inc.*, 93 F. Supp. 3d 95, 104 (E.D.N.Y. 2015) ("Mutual promises to arbitrate, while not necessary as consideration to support an agreement to arbitrate, can be sufficient consideration to support an arbitration agreement."); *Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 337 (S.D.N.Y. 2014) (compelling arbitration of Plaintiff's Title VII and ADEA claims and finding, *inter alia*, that the arbitration agreement contained "sufficient consideration because…it mutually binds both parties to submit claims exclusively to arbitration"); *Gonzalez v. Toscorp Inc.*, No. 97-8158, 1999 WL 595632 at *1-3 (S.D.N.Y. Aug. 5, 1999) (finding sufficient consideration for the arbitration agreement where the plaintiff was advised that the arbitration policy was a condition of further employment and he continued working for the company past the effective date of the policy).[4]

---

[4] The Arbitration Agreement clearly states that continued employment constitutes acceptance of the Agreement's terms.  Rodriguez Decl. Ex. 1.  Thus, since Rightnour continued her employment with Tiffany for several months after receiving the Arbitration Agreement, the fact that  she did not sign the Agreement does not impact its enforceability. *Id. See also Berkley v. Dillard's Inc.*, 450 F.3d 775, 777 (8th Cir. 2006) (holding that employee accepted the terms of the arbitration program, even though she filed administrative charge of discrimination before the employer

Thus, Rightnour's continued employment expressed her acceptance and intent to be bound, as well as adequate consideration for the Agreement, which requires her to arbitrate legal disputes "arising out of or relating to [her] employment or the termination of employment." Arbitration Agreement at p. 1. The Agreement makes clear that Tiffany employees, including Rightnour, are required to arbitrate any disputes with Tiffany, and that the employees, including Rightnour, are expected to read and understand the dispute resolution policy and arbitration procedures. *See* Arbitration Agreement, p. 1 ("[The Agreement] affects your rights. It is your sole responsibility to read and understand this Agreement."). Accordingly, because Rightnour does not dispute that she received the Agreement, and because the Agreement made clear that Rightnour was subject to a binding Arbitration Agreement should she continue her employment with Tiffany, her continued employment created an enforceable agreement to arbitrate under the FAA.

For these reasons, the Arbitration Agreement is valid and enforceable and Rightnour cannot attempt to avoid binding arbitration simply because she prefers to litigate her claims in court. Accordingly, the first factor – whether the parties agreed to arbitrate – is clearly satisfied.

---

implemented the arbitration program and she refused to sign, where employee had been informed that the arbitration agreement "applied automatically to all employees who continued their employment."). *See generally Beletsis v. Credit Suisse First Boston, Corp.*, No. 01-6266, 2002 WL 2031610, at *3 (S.D.N.Y. Sept. 4, 2002) (stating that "when an arbitration policy is a condition of employment, ... an employee 'will be deemed to have accepted' an arbitration agreement when she continues to work after the promulgation of the arbitration policy") (citing *Chanchani v. Salomon/Smith Barney, Inc.*, No. 99-9219, 2001 WL 204214, at *3 (S.D.N.Y. Mar. 1, 2001)).

### 2.  Rightnour's Claims Clearly Fall Within the Scope Of The Arbitration Agreement.

The second factor – whether the arbitration agreement covers the dispute at issue – is also easily satisfied here.  Indeed, the Arbitration Agreement is  broad, and certainly broad enough to encompass all employment related claims, which are the only claims raised in this action. Rightnour purports to bring claims for alleged workplace discrimination and retaliation under Title VII, the NYSHRL, and the NYCHRL.  *See generally* Complaint, Dkt. 1.  Rightnour's Agreement requires the arbitration of "***legal disputes***" arising from or relating to her employment with the Company, including specifically claims pursuant to the Civil Rights Act of 1964 (which includes Title VII) and "all other state and federal statutory and common law claims," including claims under the NYSHRL and NYCHRL   *See* Agreement at p. 1.  Accordingly, all of Rightnour's claims in this action are contractually subject to arbitration in accordance with the terms of the Agreement.  *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 406 (1967) (holding that agreement to arbitrate any controversy or claim arising out of or relating to parties' contract was "easily broad enough" to encompass the plaintiff's claims);  *Brown*, 559 F. Supp. 2d at 291 (enforcing agreement to arbitrate workplace conflicts, including "legal disputes"); *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987) ("[i]f the allegations underlying the claims 'touch matters' covered by the parties' [arbitration agreement], then those claims must be arbitrated, whatever the legal labels attached to them.") (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.* , 473 U.S. 614, 624 n. 13 (1985).  The second part of the test to determine arbitrability is thus also clearly satisfied.

### 3.  Congress Intended Rightnour's Claims To Be Arbitrable.

Courts in this Circuit routinely require plaintiffs to arbitrate the exact claims alleged by Plaintiff in this action where, as here, the parties' agreement evidenced a clear intent to arbitrate

such claims. *See, e.g., Waumboldt v. Callimanopulos*, No. 11-7416, 2012 WL 3589423, at *3 (S.D.N.Y. Aug. 20, 2012) (compelling arbitration of plaintiff's claims and noting it is "well-settled" that NYSHRL and NYCHRL claims are arbitrable); *Johnson v. Tishman Speyer Properties, L.P.*, No. 09-1959, 2009 WL 3364038, at *3 (S.D.N.Y. Oct. 16, 2009) (granting motion to compel arbitration of plaintiff's NYSHRL and NYCHRL claims); *Scott v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 89-3974, 1992 WL 245506, at *7 (S.D.N.Y. Sept. 14, 1992) (granting motion to compel arbitration of plaintiff's Title VII claims); *Desiderio v. NASD*, 191 F.3d 198, 204-205 (2d Cir. 1999) (noting that Title VII encourages arbitration of claims under the statute). *See also Fletcher v. Kidder, Peabody & Co.*, 81 N.Y.2d 623 (1993) (holding discrimination claims under the NYSHRL are arbitrable). Even more, Rightnour is a well-compensated, sophisticated business woman who knowingly and voluntarily entered into the Agreement as a condition of her employment with the Company. *Gold*, 365 F.3d at 150 (rejecting plaintiff's argument that he did not read and fully understand arbitration clause where he had an "MBA from a top-tier school.").

The Arbitration Agreement clearly encompasses Rightnour's Title VII, NYSHRL, and NYCHRL claims, and because there is no statutory provision or expressed legislative intent that such claims are non-arbitrable, this Court should compel Rightnour to arbitrate all covered claims. Should Plaintiff disagree, it is her burden to prove that Congress, the New York State Legislature or the New York City Legislature did not intend for these statutory claims to be arbitrable. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991); *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987). Plaintiff cannot make that showing and the third part of the test to determine arbitrability is therefore satisfied.

## II.   CONTROLLING PRECEDENT AND STRONG PUBLIC POLICY REQUIRE THAT ARBITRATION AGREEMENTS BE ENFORCED ACCORDING TO THEIR TERMS.

As the Supreme Court has continually reiterated, "[t]he principal purpose of the FAA is to ensure that private arbitration agreements are enforced according to their terms."  *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011) (internal quotation marks omitted).  Section two of the FAA makes arbitration agreements "valid, irrevocable, and enforceable" as written; Section three requires courts to stay litigation of arbitral claims pending arbitration of those claims; and Section four requires courts to compel arbitration in "accordance with the terms of the agreement" upon the motion of either party to the agreement.  *Id.* (citing the FAA).

The Supreme Court and courts in the Second Circuit have consistently held that the FAA reflects a strong public policy favoring arbitration, and that any doubts concerning the scope of an arbitration agreement must be resolved in favor of arbitration.  *See CompuCredit Corp.,* 132 S. Ct. at 665 (noting that the FAA creates a "liberal federal policy" favoring arbitration agreements and that this policy "requires courts to enforce agreements to arbitrate according to their terms."); *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) ("[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.") (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)); *see also Concepcion*, 131 S. Ct. at 1745 (noting that federal policy favors enforcing arbitration agreements and that "courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms") (citations omitted)); *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) ("if there is doubt  . . . about the scope of arbitrable issues . . . we should resolve that doubt in favor of arbitration") (internal quotation marks omitted); *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir.

11

2001) ("There is a strong federal policy favoring arbitration as an alternative means of dispute resolution . . . [i]n accordance with that policy, where, as here, the existence of an arbitration agreement is undisputed, doubts as to whether a claim falls within the scope of that agreement should be resolved in favor of arbitrability.").

Indeed, even when the scope of an arbitration provision is unclear, which is not the case here, courts are to resolve any issue in favor of arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24(1983) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."); *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002) ("[T]he Federal Arbitration Act's policy favoring arbitration requires that 'any doubts ... be resolved in favor of arbitration.'") (*quoting Moses*, 460 U.S. at 24-25).

The presumption in favor of arbitration is particularly strong where, as here, an arbitration clause uses broad language pursuant to which the parties agree to arbitrate legal disputes "*arising out of or relating to* your employment or the termination of employment." *Compare* Arbitration Agreement at p. 1 (emphasis added) *with Cohen v. UBS Fin. Servs., Inc.,* 799 F.3d 174, 175 (2d Cir. 2015) (enforcing clause that required arbitration of claims between employee and employer, including those concerning "terms or conditions of employment"); *Roberts v. Atlantic Recording Corp.*, No. 95-3524, 1995 WL 386552, at *1 (S.D.N.Y. June 29, 1995) (compelling arbitration where agreement required arbitration of claims "arising out of the contract").

Thus, when the parties agree to a broad arbitration clause like the one here, the well-established "presumption of arbitrability" mandates that "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Transp. Workers*

*Union of Am. v. Veolia Transp. Servs., Inc.,* 24 F. Supp. 3d 223, 228 (E.D.N.Y. 2014); s*ee also S.A. Mineracao Da Trindade-Samitri v. Utah Int'l, Inc.,* 745 F.2d 190, 194 (2d Cir. 1984) (same). *Wire Serv. Guild v. United Press Int'l, Inc.*, 623 F.2d 257, 260 (2d Cir. 1980) (same); *Int'l Ass'n of Machinists & Aerospace Workers v. Gen. Elec. Co.,* 406 F.2d 1046, 1048 (2d Cir. 1969) (same). Given this overwhelming precedent, it is impossible to conclude, or even to argue, that the Arbitration Agreement does not cover Rightnour's discrimination and retaliation claims.  Under controlling precedent, Rightnour's claims simply must be arbitrated.

## III.   A STAY IS PROPER BECAUSE ALL OF RIGHTNOUR'S CLAIMS IN THIS ACTION ARE SUBJECT TO ARBITRATION.

Because all of Rightnour's claims are subject to and should be compelled to arbitration, the Court should stay these proceedings with respect to her claims.  *Katz v. Cellco Partnership*, 794 F. 3d 341, 347 (2d Cir. 2015) (holding that Section 3 of the FAA mandates that the Court issue a stay of proceedings when "all of the claims in an action have been referred to arbitration" and a stay is requested). *See also Philippe v. Red Lobster Restaurants LLC*, No. 15-2080, 2015 WL 4617247, at *4 (S.D.N.Y. Aug. 3, 2015) (staying the action where "all claims have been referred to arbitration and a stay requested") (quoting *Katz*, 794 F. 3d at 347); *Love v. BMW Financial Services NA, LLC*, No. 15-124, 2016 WL 259710, at *4 (E.D.N.Y. Jan. 21, 2016) (same).

## **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court stay the action and compel arbitration of all of Rightnour's claims pursuant to the Arbitration Agreement.

Dated:  New York, New York          Respectfully submitted,
        July 8, 2016


                                   MORGAN, LEWIS & BOCKIUS LLP


                                   By: */s/ Melissa C. Rodriguez*
                                        Melissa C. Rodriguez

                                        101 Park Avenue
                                        New York, NY 10178
                                        Tel.: (212) 309-6000
                                        Fax: (212) 309-6001

                                        *Attorneys for Defendant*