Law Offices of
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, New York 10178
(212) 309-6000
Attorneys for Defendant

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------------x
KRISTIN RIGHTNOUR,                              :
                                                :
                 Plaintiff,                     :
                                                :
          -against-                             :         1:16-cv-03527
                                                :
TIFFANY AND COMPANY,                            :
                                                :
                 Defendant.                     :
-----------------------------------------------------------------------x
```

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS**
**MOTION TO COMPEL ARBITRATION AND STAY THIS ACTION**

MORGAN, LEWIS & BOCKIUS LLP
Melissa C. Rodriguez

101 Park Avenue
New York, NY 10178
Tel.: (212) 309-6000
Fax: (212) 309-6001

*Attorneys for Defendant*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ........................................................................................................... 1

I.      THE ARBITRATION AGREEMENT IS VALID AND ENFORCEABLE ..................... 1

     A.      Plaintiff's Continued Employment Created a Binding Agreement ...................... 1

     B.      Plaintiff's Purported Refusal To Sign The Agreement Does Not  Impact
        Its Enforceability............................................................................................ 2

     C.      Plaintiff's Claims Prior to the Agreement Are Subject to Arbitration.................. 7

CONCLUSION ....................................................................................................... 10

## **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Alvarez v. Coca-Cola Refreshments, USA, Inc.*,
    914 F. Supp. 2d 256 (E.D.N.Y. 2012) ...................................................................4

*Antinore v. State*,
    371 N.Y.S.2d 213 (N.Y. App. Div. 1975) ...........................................................5

*Arrigo v. Blue Fish Commodities, Inc.*,
    408 F. App'x 480 (2d Cir. 2011) ........................................................................8

*Bayer v. Neiman Marcus Holdings, Inc.*,
    582 F. App'x. 711 (9th Cir. 2014) ......................................................................3

*Beletsis v. Credit Suisse First Boston, Corp.*,
    No. 01-6266, 2002 WL 2031610 (S.D.N.Y. Sept. 4, 2002) ...............................2

*Berkley v. Dillard's Inc.*,
    450 F.3d 775 (8th Cir. 2006) ...............................................................3, 6, 7, 8, 9

*Brennan v. Bally Total Fitness*,
    198 F. Supp. 2d 377 (S.D.N.Y. 2002).............................................................9, 10

*Brown v. Coca-Cola Enters., Inc.*,
    No. 08-CV-3231 (JFB)(ETB), 2009 WL 1146441 (E.D.N.Y. Apr. 28, 2009).........5

*Brown v. St. Paul Travelers Cos. Inc.*,
    331 F. App'x 68 (2d Cir. 2009) ..........................................................................4

*Couch v. AT&T Servs., Inc.*,
    No. 13-2004, 2014 WL 7424093 (E.D.N.Y. Dec. 31, 2014)........................1, 2, 3, 4

*Douglas v. Timex Corp., BTX, Inc.*,
    No. Civ.A.H-98-985, 1998 WL 34072739 (S.D. Tex. Dec. 30, 1998)....................9

*DuBois v. Macy's E. Inc.*,
    338 F. App'x 32 (2d Cir. 2009) ..........................................................................2

*Duraku v. Tishman Speyer Props., Inc.*,
    714 F. Supp. 2d 470 (S.D.N.Y. 2010)................................................................8

*Epstein Becker & Green, P.C. v. Brown*,
    No. 10 Civ. 4784 (LTS)(JCF), 2010 WL 3835067 (S.D.N.Y. Sept. 10, 2010) ...............5, 6, 9

*Hardin v. First Cash Fin. Servs., Inc.*,
    465 F.3d 470 (10th Cir. 2006) .......................................................................3, 6, 7

-ii-

*In re Ionosphere Clubs, Inc.*,
    85 F.3d 992 (2d Cir. 1996)...............................................................................................4, 5

*In re Refco, Inc. Sec. Litig.*,
    Nos. 07 MDL 1902 (GEL), 07 Civ. 11604 (GEL), 2008 WL 2185676
    (S.D.N.Y. May 21, 2008).............................................................................................3, 5

*Lai Chan v. Chinese-American Planning Council Home Attendant Program, Inc.*,
    No. 15-cv-9605 (KBF), 2016 WL 3004518 (S.D.N.Y. Apr. 8, 2016).......................................8

*Manigault v. Macy's E., LLC*,
    318 F. App'x 6 (2d Cir. 2009) .....................................................................1, 2, 3, 4

*Mastrobuono v Shearson Lehman Hutton, Inc.*,
    514 U.S. 52 (1995)...............................................................................................4

*Newhall v. Chase Home Fin., LLC*,
    No. 8:10-cv-2624-T-26EAJ, 2010 WL 8759340 (M.D. Fla. Dec. 22, 2010) ...........................9

*Sharma v. Oriol*,
    No. 05 Civ. 2727 (SAS), 2005 WL 1844710 (S.D.N.Y. Aug 3, 2005) ...................................6

*Siderugica Del Orinoco (Sidor), C.A. v. Linea Naviera De Cabotaje, C.A.*,
    No. 99-0075, 1999 WL 632870 (S.D.N.Y. Aug. 19, 1999).................................................2, 3

*Smith/Enron Congregation Ltd. v. Smith Congregation Int'l, Inc.*,
    198 F.3d 88 (2d Cir. 1999)..........................................................................................8

## PRELIMINARY STATEMENT

As Tiffany demonstrated in its Motion to Compel Arbitration,[1] Plaintiff is bound by an Arbitration Agreement that requires that her claims in this action be submitted to individual arbitration.  In her Opposition ("Opp."), Plaintiff does not dispute that her claims fall within the scope of the Arbitration Agreement.  Nor does Plaintiff dispute that she received the Agreement via email, that the Agreement unambiguously provides that her continued employment constituted acceptance of its terms and that she continued her employment thereafter.  Rather, Plaintiff argues that she should not be compelled to arbitrate her claims because, months after receiving the Agreement and continuing her employment, she purportedly rejected the Agreement, and because her counsel sent "demand letters" to Tiffany that preceded the Agreement.  Both arguments fail as a matter of law.  Contrary to Plaintiff's claims, by continuing to work with Defendant after receiving the Agreement, Plaintiff became bound by its express terms, and her claims, which arise out of her employment with Tiffany, must be arbitrated.

## ARGUMENT

### I.  THE ARBITRATION AGREEMENT IS VALID AND ENFORCEABLE.

#### A.  Plaintiff's Continued Employment Created a Binding Agreement.

It is well-established that an employee will be deemed to have assented to an arbitration agreement by continuing to work after receiving notice that continued employment signifies acceptance of the agreement's terms.  *See Manigault v. Macy's E., LLC*, 318 F. App'x 6, 8 (2d Cir. 2009) (under New York law, notice and continued employment constitutes acceptance of an arbitration agreement); *Couch v. AT&T Servs., Inc.*, No. 13-2004, 2014 WL 7424093 (E.D.N.Y. Dec. 31, 2014) (enforcing an arbitration agreement based on plaintiff's continued employment

---

[1] All terms herein are ascribed the same meaning as in Defendant's moving brief ("Def. Mem.").

with defendant); *Beletsis v. Credit Suisse First Boston, Corp.*, No. 01-6266, 2002 WL 2031610, at *3 (S.D.N.Y. Sept. 4, 2002) ("when an arbitration policy is a condition of employment, ... an employee 'will be deemed to have accepted' an arbitration agreement when she continues to work after the promulgation of the arbitration policy").

As Defendant demonstrated (Def. Mem. 5-8), by implementation of the Arbitration Agreement, Tiffany offered Plaintiff a contract of at-will employment from that point forward. Specifically, the Agreement unambiguously provides that **"continuing your employment after receipt of this Agreement constitutes mutual acceptance of the terms of this Agreement by you and the Company"** and **"Arbitration is a mandatory condition of your employment with the Company."** *See* Arbitration Agreement (emphasis added), at Rodriguez Decl. Ex. 1. Once Plaintiff accepted Tiffany's offer through her continued employment, she was bound by all the applicable terms and conditions, including the Arbitration Agreement. *See Manigault*, 318 F.. App'x at 8; *Couch*, 2014 WL 7424093; *see also DuBois v. Macy's E. Inc.*, 338 F. App'x 32, 33 (2d Cir. 2009) ("[u]nder New York law, where at at-will employee remains in a defendant's employment after the employer has modified the terms of employment, the employee is 'deemed to have assented to the modification and, in effect, commenced employment under a new contract'" and, as a result, compelling arbitration of plaintiff's Title VII claims where he continued employment with the defendant after the arbitration program was rolled out). Accordingly, the Agreement should be enforced in accordance with its terms.

### B.   Plaintiff's Purported Refusal To Sign The Agreement Does Not Impact Its Enforceability.

The law in the Second Circuit is clear that "a party may be bound by an agreement to arbitrate even in the absence of a signature." *See e.g., Manigault*, 318 F. App'x at 8; *Siderugica Del Orinoco (Sidor), C.A. v. Linea Naviera De Cabotaje, C.A.*, No. 99-0075, 1999 WL 632870,

at *5 (S.D.N.Y. Aug. 19, 1999) (noting that an arbitration agreement need not be signed to be enforceable).   Here, the Arbitration Agreement does not require a signature to signify acceptance.[2]   *See* Arbitration Agreement.   Rather, the Agreement makes clear that continued employment signifies assent to its terms.   *Id.*   Because Plaintiff continued her employment following receipt of the Agreement, she objectively manifested her assent to the Agreement and became bound by its terms.

The fact that, after performing under the Agreement ***for over two months***, Plaintiff may have her "changed her mind" and indicated, for the first time, that she would not sign and purportedly "rejected" the Agreement is irrelevant.   *See Manigault*, 318 F. App'x at 8; *Siderugica*, 1999 WL 632870, *5; *Couch*, 2014 WL 7424093; *see also Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 472 (10th Cir. 2006) (enforcing arbitration agreement that provided that continued employment would manifest assent to its terms where plaintiff continued working, even though she had informed her supervisor that she refused to sign and abide by the agreement); *Berkley v. Dillard's Inc.*, 450 F.3d 775, 777 (8th Cir. 2006) (holding that employee accepted the terms of the arbitration program, even though she refused to sign it, where employee had been informed that the arbitration agreement "applied automatically to all employees who continued their employment.").   The law does not allow Plaintiff to "pick and choose" which provisions of Tiffany's offer of employment suit her purposes and disclaim a part of the contract after having performed for months pursuant to the rest.   *See, e.g., In re Refco, Inc. Sec. Litig.*, Nos. 07 MDL 1902 (GEL), 07 Civ. 11604 (GEL), 2008 WL 2185676, at *5

---

[2] Plaintiff's reliance on *Bayer v. Neiman Marcus Holdings, Inc.*, 582 F. App'x. 711 (9th Cir. 2014) is misplaced; unlike in the instant case, the arbitration agreement in *Bayer* "required the employee's signature."  582 F. App'x. at 711.

(S.D.N.Y. May 21, 2008) (enforcing an unsigned contract's arbitration clause "where the non-signing party received the contract and knowingly accepted its benefits."); *see also In re Ionosphere Clubs, Inc.*, 85 F.3d 992, 998 (2d Cir. 1996) (noting that "well-settled principles of estoppel dictate that where a party seeks the benefits of a contract, it cannot disaffirm its burdens").  To the contrary, a contract "should be read to give effect to all its provisions." *Mastrobuono v Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995).

Plaintiff's claim that she did not review the February 2015 email with the Agreement until April 2015 (Opp. at 3) is of no moment.  In New York, there is a presumption that emails are received and can be binding in the arbitration context.  *Manigault*, 318 F. App'x at 8 (finding that emails containing an arbitration agreement are presumed to be received); *Couch*, 2014 WL 7424093 (enforcing arbitration program after rejecting plaintiff's claim that he never received the email notifying employees the company was implementing the program and providing a link to the arbitration provisions where the email was sent via a reliable server, to the employee's work email address, the employee had an obligation to monitor his emails, and the employer could demonstrate the exact time that the email was sent).[3]  That presumption is particularly appropriate here, as Tiffany sent **no less than ten emails** to Plaintiff reminding her of the Agreement -- including at least **six emails** before Plaintiff first indicated she would not sign it.  Rodriguez Decl. Ex. 2.  *See id.; Brown v. St. Paul Travelers Cos. Inc.*, 331 F. App'x 68, 69 (2d

---

[3] The case Plaintiff cites, *Alvarez v. Coca-Cola Refreshments, USA, Inc.,* 914 F. Supp. 2d 256 (E.D.N.Y. 2012) is distinguishable because, unlike the plaintiff in *Alvarez*, Rightnour does not dispute that she *received* the Agreement.  Moreover, the court in *Couch* specifically rejected the reasoning of *Alvarez*, finding that the rebuttable presumption of receipt of mailings applied by the Second Circuit in *Manigault* was proper.  *Couch*, 2014 WL 7424093, at 7.

4

Cir. 2009) (finding that the plaintiff "is 'deemed to have accepted' the arbitration policy by continuing to work after being advised 'that it was her responsibility to read and understand all of the company policies including the arbitration policy.'"); *Brown v. Coca-Cola Enters., Inc.*, No. 08-CV-3231 (JFB)(ETB), 2009 WL 1146441, at *7 (E.D.N.Y. Apr. 28, 2009) (finding plaintiff's continued employment was sufficient to manifest assent where the employer sent multiple notices advising him of the arbitration program).   Plaintiff cannot be allowed to disclaim her contractual commitments by playing ostrich and "burying her head in the sand" with respect to certain terms of employment (here, the Arbitration Agreement) while receiving the other benefits of her continued employment with Tiffany.  *See In re Refco, 2008 WL 2185676; In re Ionosphere Clubs*, 85 F.3d at 998 (2d Cir. 1996); *Antinore v. State*, 371 N.Y.S.2d 213, 217 (N.Y. App. Div. 1975) (holding that an employee could not accept the benefits of a collective bargaining agreement while simultaneously denying the arbitration provision in the agreement).

In any case, even if the Court were inclined to accept Plaintiff's claim that she did not review the Agreement until April 2015, her belated objection is still of no consequence.[4]  Indeed,

---

[4] The cases upon which Plaintiff relies in support of her argument that "no arbitration agreement exists here because Plaintiff opted out of it" (Opp. at 8 (citing cases)) are inapposite, as the agreements at issue in those cases had express opt-out clauses.  Here, the Arbitration Agreement has no such opt-out clause and reading an opt-in clause into the Agreement would obliterate the effect of mandatory arbitration provisions, which have been consistently approved by courts in the Second Circuit.  *See* Def. Mem. 4-6; *Epstein Becker & Green, P.C. v. Brown*, No. 10 Civ. 4784 (LTS)(JCF), 2010 WL 3835067, at *3 (S.D.N.Y. Sept. 10, 2010) (holding that under New York law, an arbitration agreement is not invalid simply because it is presented on a take-it-or-leave-it basis).  Moreover, requiring assent other than through continued employment would

5

because Plaintiff *still* continued working with Tiffany after *again* being reminded following her purported objection that she would be deemed to have assented to the Agreement through continued employment, she is bound by its terms. *See Sharma v. Oriol*, No. 05 Civ. 2727 (SAS), 2005 WL 1844710, at *2 (S.D.N.Y. Aug 3, 2005) (noting that to determine whether there was a valid agreement to arbitrate, "[a] court should consider only whether there was an objective agreement with respect to the entire contract.") (internal citations and quotation marks omitted); *see also Hardin*, 465 F.3d at 472; *Berkley,* 450 F.3d at 777.

*Hardin*, 465 F.3d 470, is instructive.  In *Hardin*, the employer implemented a dispute resolution program ("DRP") – an offer of employment – which employees were deemed to have accepted through continued employment.  465 F.3d at 472.  The plaintiff informed her supervisor that she refused to abide by those terms, including the DRP, but continued working for the employer.  *Id.*  In response, the employer reiterated that plaintiff's continued employment would serve as her acceptance.  *Id.*  In enforcing the DRP, the Tenth Circuit concluded that, while the plaintiff's original rejection of the DRP may have constituted a counteroffer, the fact that the employer rejected the counteroffer and reiterated its original offer manifested its intention not to permit a counteroffer to terminate the employee's power of acceptance.  *Id.* at 476.  Because the plaintiff continued working without objection after the employer reiterated its offer of employment, the Tenth Circuit concluded that plaintiff's continued employment constituted acceptance of the terms of the DRP despite her prior statement to her supervisor.  *Id.*

Similarly, in *Berkley*, the Eighth Circuit concluded that the plaintiff's refusal to sign a form acknowledging receipt of the arbitration agreement did not constitute valid rejection of

---

require the Court to invalidate the plain language of the Agreement, which would be totally inconsistent with both basic contract law and well-established Second Circuit case law.  *Id.*

employer's offer to arbitrate.  450 F.3d at 777.  In so finding, the court noted that plaintiff was specifically advised that her refusal to sign the form did not affect the arbitration agreement, and that her continued employment operated as an acceptance of the agreement.[5]  *Id.* Because the plaintiff continued working, the court concluded that she accepted the arbitration agreement.  *Id.*

The result in *Hardin* and *Berkley* is plainly appropriate here.  As in those cases, here, once Plaintiff indicated that she would not sign the Agreement, Tiffany rejected her "counteroffer" and reiterated its original offer, again reminding Plaintiff that her continued employment signified her assent to be bound by the Arbitration Agreement.  Rodriguez Decl. Ex. 2; Opp. Ex. D.  Plaintiff *still* continued working with Tiffany for several months, without raising any further issue with respect to the Agreement.  *Id.;* Complaint.  Because Plaintiff accepted the benefits of continued employment, which required arbitration as a condition -- and was specifically reminded that she would be bound by the Agreement if she continued working, whether she signed it or not -- the Agreement should be enforced.

## C.   Plaintiff's Claims Prior to the Agreement Are Subject to Arbitration.

Plaintiff further argues that she should not be compelled to arbitration because her counsel sent "demand letters" notifying Tiffany of some of Plaintiff's claims before the implementation of the Arbitration Agreement.  Once again, Plaintiff's arguments miss the mark.

At the outset, "[t]he Second Circuit has indicated that, in the absence of a provision placing a temporal limitation on arbitrability, an arbitration provision may cover claims that

---

[5] Plaintiff's attempt to distinguish her *Berkley* is fruitless.  There, as here, the agreement at issue makes arbitration a condition for continued employment and the employer specifically told the employee that the arbitration provision would be binding by continuing employment.  *See Berkley*, 450 F.3d at 777; *see also* Opp. Ex. D; Arbitration Agreement.

accrued prior to the execution of the agreement to arbitrate." *Lai Chan v. Chinese-American Planning Council Home Attendant Program, Inc.*, No. 15-cv-9605 (KBF), 2016 WL 3004518 (S.D.N.Y. Apr. 8, 2016) (compelling arbitration of claims already pending in court based on amendment to collective bargaining agreement with arbitration provision); *see also Arrigo v. Blue Fish Commodities, Inc.*, 408 F. App'x 480, 482 (2d Cir. 2011) (enforcing arbitration agreement retroactively where "nothing in the arbitration provision places a temporal limitation on arbitrability"); *Smith/Enron Congregation Ltd. v. Smith Congregation Int'l, Inc.*, 198 F.3d 88, 99 (2d Cir. 1999) (retroactively enforcing arbitration agreement that did "not contain any temporal limitation").  Here, the Agreement clearly provides that disputes "arising out of or relating to [Plaintiff's] employment or the termination of employment" will be resolved by mandatory individual arbitration, without regard to when the claims arose.  *See* Arbitration Agreement.  Thus, under well-established Second Circuit precedent, the Arbitration Agreement covers and requires arbitration of all of Plaintiff's claims, including any claims arising before her receipt of the Agreement.

The fact that Plaintiff's counsel sent "demand letters" notifying Tiffany of some of Plaintiff's claims before the implementation of the Agreement, or that she filed an EEOC charge before her purported "objection" to the Agreement, is of no moment.  Indeed, courts routinely compel arbitration of claims that are pending at the time arbitration programs are implemented. *See, e.g., Lai Chan*, 2016 WL 3004518; *Duraku v. Tishman Speyer Props., Inc.*, 714 F. Supp. 2d 470, 475 (S.D.N.Y. 2010) (finding that arbitration provision in a supplemental collective bargaining agreement applied retroactively to claims already pending in court); *Berkley,* 450 F.3d at 777 (enforcing arbitration program, even though plaintiff filed administrative charge of

8

discrimination before the employer implemented the program);[6] *Newhall v. Chase Home Fin., LLC*, No. 8:10-cv-2624-T-26EAJ, 2010 WL 8759340 (M.D. Fla. Dec. 22, 2010) (applying arbitration agreement to claims already filed in court); *Green v. W.R.M. & Assocs.*, Ltd., 174 F. Supp. 2d 459, 462-63 (N.D. Miss. 2001) (compelling arbitration of plaintiff's claims, even though the agreement was signed after plaintiff filed two EEOC charges and attempted mediation); *Douglas v. Timex Corp., BTX, Inc.*, No. Civ.A.H-98-985, 1998 WL 34072739, at *1- 4 (S.D. Tex. Dec. 30, 1998) (enforcing arbitration agreement signed after plaintiffs' internal complaints).

Plaintiff's purported policy arguments are similarly unconvincing.  First, Plaintiff argues that requiring arbitration as a condition of employment makes the right to counsel "meaningless" because she still could not refuse to arbitrate.  Opp. at 11.  This argument, however, conveniently ignores the fact that Plaintiff was not obligated to remain with Tiffany and that mandatory arbitration clauses are valid and enforceable in the Second Circuit.  *See Epstein Becker*, 2010 WL 3835067, *3.

Second, relying on *Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377 (S.D.N.Y. 2002), Plaintiff disingenuously argues that courts have "recognized the inherent issue in requiring employees to sign an arbitration agreement in the middle of their employment" after initiating an action against their employer regarding those claims.  Opp. at 11.  However, this stretches the

---

[6] Once again, Plaintiff cannot distinguish *Berkley*, where the court enforced an arbitration program implemented after the employee brought an EEOC charge.  450 F.3d 775.  Plaintiff does not (and cannot) explain why implementing an arbitration policy after an employee brings an EEOC charge would somehow make the arbitration policy more enforceable than a policy, like the one here, implemented after a demand letter from counsel.

holding in *Brennan* too far.  In *Brennan*, the court specifically noted that continued employment is sufficient consideration for enforcing an arbitration agreement.  *Id.* at 384, n. 8.  However, the court refused to enforce the arbitration agreement at issue after finding that the employees had no more than fifteen minutes to review a sixteen-page single-spaced document, the employer never mentioned or suggested that the employees could review the agreement at home or with an attorney, and threatened to deny promotions to employees who refused to sign.  *Id.*  None of those facts exist here.  To the contrary, Tiffany permitted Plaintiff to review the Agreement at her leisure, suggested that she consult an attorney, and did not in any way threaten Plaintiff's employment.[7]

## **CONCLUSION**

For the foregoing reasons and those set forth in Defendant's moving papers, Defendant's Motion should be granted and Plaintiff should be compelled to arbitrate her claims pursuant to the Arbitration Agreement.

Dated:  New York, New York                    Respectfully submitted,
        August 2, 2016                    MORGAN, LEWIS & BOCKIUS LLP

                                               By: */s/ Melissa C. Rodriguez*
                                                 Melissa C. Rodriguez
                                                 101 Park Avenue
                                                 New York, NY 10178
                                                 Tel.: (212) 309-6000
                                                 Fax: (212) 309-6001

                                             *Attorneys for Defendant*

---

[7] Unlike the case at hand, the plaintiff in *Goldsmith v. Bagby Elevator Co., Inc.* was allegedly fired *because* he refused to sign the arbitration agreement.  513 F.3d 1261, 1278 (11th Cir. 2008).  No such claim exists here.  *See generally* Complaint; Opp.