**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**KRISTIN RIGHTNOUR,**

                **Plaintiff,**

      **- against -**

**TIFFANY AND COMPANY,**

                **Defendant.**

**16-cv-3527 (JGK)**

<u>**OPINION AND ORDER**</u>

**JOHN G. KOELTL, District Judge:**

The plaintiff, Kristin Rightnour, sued Tiffany and Company ("Tiffany") for religious discrimination and retaliation under federal and local law. Tiffany petitions for an order to stay this action and compel the plaintiff to arbitrate the dispute pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3, 4. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

## I.

### A.

The following facts are taken from the parties' submissions.

Rightnour began working for Tiffany as the Director of Marketing in October 2013. Compl. ¶ 12. In April 2014 Rightnour, a practicing Catholic, had a conversation with two other employees, one of whom is Jewish. <u>Id.</u> ¶ 14. Allegedly at the Jewish colleague's request, Rightnour "explained the crucifixion

story." Id. ¶ 15. At the end of 2014, a human resources manager from Tiffany allegedly informed Rightnour that Tiffany had received a complaint from one of Rightnour's coworkers that Rightnour had stated that "the Jewish people killed Jesus." Id. ¶ 17. Rightnour denied making the statement but also explained that she is a devout Catholic and that the views she expressed to her colleagues are standard Catholic beliefs. Id. ¶ 18. Tiffany issued the plaintiff a formal warning and informed her that it would withhold her entire 2014 bonus. Id. ¶¶ 19-20. Tiffany also made the plaintiff ineligible for a merit increase or transfer for a period of one year. Id. ¶ 20.

In response, in December 2014, through counsel, the plaintiff complained to Tiffany's legal department that she had been subject to unlawful religious discrimination. Id. ¶ 21; Coleman Decl. in Opp. to Mot. Exs. A, B. She alleges that months later, in March 2015, Tiffany retaliated against her by issuing a negative performance review to her. Compl. ¶ 22. The following month, on April 22, 2015, Rightnour filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging religious discrimination and retaliation in violation of federal, state, and local antidiscrimination laws. Id. ¶ 24; Coleman Decl. Ex. C.[1] The plaintiff alleges that two

---

[1] While the Complaint alleges that the EEOC Complaint was filed on April 20, 2015, the EEOC Complaint itself indicates that it

days later, Tiffany informed her that it would not be promoting her to the newly-established position of Group Director of Brand Management, and instead promoted an individual that Rightnour claims was significantly less qualified than she. Compl. ¶ 25.

**B.**

In late February 2015, Tiffany sent Rightnour and other Tiffany employees a form email with the subject line "You have been enrolled in the Dispute Resolution Agreement course." Rodriguez Decl. in Supp. of Mot. Ex. 2. That email reads:

> Hi Kristin Rightnour
>
> Tiffany and Company is providing employees with dispute resolution agreements, which offer the resolution of employment-related disputes through arbitration. You will be provided with a Dispute Resolution Agreement in the attached learning module.
>
> Please click on the link below to review the Dispute Resolution Agreement and acknowledge the receipt of the Agreement **at your earliest convenience.**
>
> [hyperlink titled "Dispute Resolution Agreement"]
>
> If you have any questions regarding this matter, please contact your local Human Resources Generalist.

Rodriguez Decl. Ex. 2 (first emphasis added, second emphasis in original). Rightnour alleges that she "did not review, nor did any person at Tiffany ever personally ask [her] to review" the Dispute Resolution Agreement at that time. Rightnour Decl. ¶ 2.

_____

was filed on April 22, 2015, and the plaintiff also accepts that date. Rightnour Decl. in Opp. to Mot. ¶ 3.

Tiffany sent emails to Rightnour throughout March and April which were identical to the one sent in February, and then on April 13 sent the following personalized email:

> On February 27, 2015, you received an e-mail notifying you of Tiffany and Company's Dispute Resolution Agreement and inviting you to participate in a related learning module. As explained in the learning module, you are subject to the terms of the Dispute Resolution Agreement.
>
> For your convenience, we have attached a link to the [hyperlink to Dispute Resolution Agreement]. The learning module will reside in Self Service.
>
> If you have any questions, please contact your Human Resources Generalist. Do not reply to this email.

Rodriguez Decl. Ex. 2 p. 8. It is unclear whether Rightnour read that email when it was sent, but she allegedly did not review the Dispute Resolution Agreement at that time. Ten days after the email was sent, on April 23, Rightnour sent her immediate supervisor a copy of the EEOC complaint that had been filed the day before, on April 22. Rightnour Decl. ¶ 3; Ex. A.

Rightnour alleges that she first viewed the Dispute Resolution Agreement on April 28, 2015, when her supervisors directed her to complete a set of "routine training programs" online. Id. ¶ 5. Upon logging into one of the programs, the training module prompted Rightnour to "review and acknowledge the terms of the Dispute Resolution Agreement." Id. ¶ 6. The Dispute Resolution Agreement contains a "Binding Agreement to Arbitrate," which "requires arbitration of legal disputes

4

between [the employee] and Tiffany and Company [] arising out of
or relating to [the employee's] employment or the termination of
employment." Rodriguez Decl. Ex. 1 p. 1. The Agreement also
states:

> Arbitration is a mandatory condition of your employment
> with the Company.
>
> You will receive training on the Dispute Resolution Program
> and this Agreement and will be asked to sign an
> acknowledgment. However, and regardless of whether you
> submit the acknowledgment, continuing your employment after
> receipt of this Agreement constitutes mutual acceptance of
> the terms of this Agreement by you and the Company.
>
> You have the right to consult with counsel of your choice
> concerning this Agreement.

Id. The plaintiff alleges that, because she "did not want to
waive [her] rights to pursue in court the claims that [she]
asserted in [her] prior demand letters and EEOC Charge," and the
online module did not permit her to complete the program without
clicking "yes" and agreeing to the terms set forth in the
Dispute Resolution Agreement, she "immediately exited out of the
program and did not complete it." Rightnour Decl. ¶ 8.

The next day, April 29, 2015, Rightnour emailed her
supervisor, stating, in relevant part:

> I don't know if [the Dispute Resolution Agreement] is
> mandatory, but I wanted to let you know that I won't be
> completing this module or signing the agreement contained
> in it. I have been advised by my attorney that signing the
> agreement in this training would essentially coerce me to
> waive very significant legal rights. I fully intend to
> pursue the claims raised in the EEOC charge and/or anything
> related to those claims in court should we not be able to

reach a resolution so [I] am not willing to sign a contract
that would inhibit this process.

Rightnour Decl. Ex. B. The record does not reflect what, if any,
response the plaintiff received. That same day, Rightnour's
lawyer contacted Tiffany to reiterate that Rightnour did not
agree to the Dispute Resolution Agreement, and expressed concern
that "it could also be viewed as a threat that if she does not
allow such circumvention [of her right to litigate] to occur,
her job might be in jeopardy." Coleman Decl. Ex. D p. 2. A
representative from Tiffany responded that "regardless of
whether the employee acknowledges receipt, it is our view that
the employees' continued employment after receipt of the Dispute
Resolution Agreement constitutes their and the Company's mutual
acceptance of the Dispute Resolution Agreement." Coleman Decl.
Ex. D p. 1. Tiffany asserted that "[w]e will not take any job
action against an employee based on their asserted refusal to be
bound by the Dispute Resolution Agreement," but reiterated that
in its view, "all employees who continue their employment after
receipt of the Dispute Resolution Agreement are bound." Id.

Rightnour received three more form emails in June 2015
which were identical to those sent in February and March; those
emails stated that the "dispute resolution agreements[] offer
the resolution of employment-related disputes through
arbitration" and indicated that the Agreement would "be provided

6

. . . in the attached learning module." Rodriguez Decl. Ex. 2 p. 9-11 (emails dated June 5, June 12, and June 19).

Rightnour continued her employment with Tiffany and filed an Amended Charge with the EEOC on June 10, 2015. Coleman Decl. Ex. E. The following month, on August 13, 2015, the plaintiff's employment was terminated. <u>See</u> Compl. ¶ 29. Rightnour alleges that the reason given for her termination – that her performance "had not developed up to [Tiffany's] standards" – was pretextual. <u>Id.</u>

The EEOC issued a Notice of Right to Sue on February 11, 2016, and Rightnour filed the Complaint in this case on May 11, 2016. The defendant now asks this Court to compel arbitration of the plaintiff's claims pursuant to the Dispute Resolution Agreement.

## II.

### A.

Under 9 U.S.C. § 4, "a district court must enter an order to arbitrate upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 22 n.27 (1983) (quotation marks omitted). Pursuant to the FAA, "a court asked to stay proceedings pending arbitration in a case covered by the Act has essentially four tasks: first, it must determine whether the parties agreed to

arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then determine whether to stay the balance of the proceedings pending arbitration." Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 844 (2d Cir. 1987) (citations omitted). Only the first task is at issue here.

"The determination of whether parties have contractually bound themselves to arbitrate a dispute -- a determination involving interpretation of a state law -- is a legal conclusion." Specht v. Netscape Commc'ns Corp., 306 F.3d 17, 26 (2d Cir. 2002). In answering that question, "the court applies a standard similar to that applicable for a motion for summary judgment. If there is any issue of fact as to the making of the agreement for arbitration, then a trial is necessary." Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003) (citing 9 U.S.C. § 4). "A party resisting arbitration on the ground that no agreement to arbitrate exists must submit sufficient evidentiary facts in support of this claim in order to precipitate the trial contemplated by 9 U.S.C. § 4." Manning v. Energy Conversion Devices, Inc., 833 F.2d 1096, 1103 (2d Cir. 1987).

8

"Arbitration clauses are a matter of contract law and, if valid, should be enforced." DuBois v. Macy's East Inc., 338 Fed. App'x 32, 33 (2d Cir. 2009) (summary order). "[T]he ultimate question of whether the parties agreed to arbitrate is determined by state law." Bell v. Cendant Corp., 293 F.3d 563, 566 (2d Cir. 2002). Thus, "[w]hen deciding whether the parties agreed to arbitrate a certain matter," courts generally "should apply ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). Under New York law, which the parties agree applies in this case, "[a] party to an agreement may not be compelled to arbitrate its dispute with another unless the evidence establishes the parties' clear, explicit and unequivocal agreement to arbitrate." God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs., LLP, 845 N.E.2d 1265, 1267 (N.Y. 2006) (quotation marks omitted). Although the arbitration agreement must be in writing, "[t]here is no requirement that the writing be signed so long as there is other proof that the parties actually agreed on it." Crawford v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 319 N.E.2d 408, 412 (N.Y. 1974) (quotation marks omitted).

**B.**

9

The parties do not dispute that the Dispute Resolution Agreement contains a binding arbitration provision; that the plaintiff's claims under Title VII and the New York City Human Rights Law fall within the scope of that provision; and that the claims are not, as a matter of Congressional intent, nonarbitrable per se. See Genesco, 815 F.2d at 844. The only question is whether the parties entered into the Dispute Resolution Agreement. The defendant argues that Rightnour agreed to the Dispute Resolution Agreement by continuing her employment after the first date that she received an email with a link to the online learning module, which in turn contained a copy of the Dispute Resolution Agreement. Rightnour argues that her continued employment after reviewing the Dispute Resolution Agreement did not create an enforceable agreement to arbitrate because she immediately, explicitly, and repeatedly rejected the Agreement in writing.

At the outset, Tiffany argues that "the strong federal policy favoring arbitration requires that Rightnour be compelled to arbitrate all of her claims." Defs. Brief in Supp. of Mot. p. 4. But that presumption does not apply. "[T]he presumption in favor of arbitrability should only be applied 'where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand.' In other words, while doubts concerning the scope of an arbitration clause should be

resolved in favor of arbitration, the presumption does not apply
to disputes concerning whether an agreement to arbitrate has
been made." Applied Energetics, Inc. v. NewOak Capital Markets,
LLC, 645 F.3d 522, 526 (2d Cir. 2011) (citations omitted)
(quoting Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S.
287, 301 (2010)).

### 1.

The agreement to arbitrate must be proved by a
preponderance of the evidence. Progressive Cas. Ins. Co. v. C.A.
Reaseguradora Nacional De Venezuela, 991 F.2d 42, 46 (2d Cir.
1993). "To form a valid contract under New York law, there must
be an offer, acceptance, consideration, mutual assent and intent
to be bound." Register.com, Inc. v. Verio, Inc., 356 F.3d 393,
427 (2d Cir. 2004) (quotation marks omitted). Mutual assent need
not be signified in writing; "[t]he manifestation or expression
of assent necessary to form a contract may be by word, act, or
conduct which evinces the intention of the parties to contract."
Id. (quotation marks omitted). Tiffany argues that Rightnour's
continued employment after February 27, 2015 constitutes
acceptance of the Dispute Resolution Agreement, because the
Agreement states that "regardless of whether you submit the
acknowledgement, continuing your employment after receipt of
this Agreement constitutes mutual acceptance of the terms of

this Agreement by you and the Company." Rodriguez Decl. Ex. 1 p. 1.

February 27, 2015 was the first date on which Rightnour received an email regarding the Dispute Resolution Agreement, and Tiffany argues that receipt of that email also constituted "receipt" of the Dispute Resolution Agreement. However, even if Rightnour is presumed to have received and read the emails sent to her in February and March 2015, Tiffany has not produced any evidence that Rightnour "clicked through" to the online module at that time. Cf. Dixon v. NBCUniversal Media, LLC, 947 F. Supp. 2d 390, 400 (S.D.N.Y. 2013) (relying on the fact that the employee had "followed the link" to the relevant online training program and completed the training to conclude that the employee was bound by the arbitration provision contained therein). And nothing in the emails sent to Rightnour between February and early April 2015 would have alerted her that the online "learning module" contained a binding arbitration agreement, or that she would be bound by such an agreement if she continued her employment.[2] In fact, the emails imply that any agreement to arbitrate would be optional. The emails state: "Tiffany and

---

[2] The sole email that indicated Rightnour would be "subject to the terms of the Dispute Resolution Agreement" was not sent until April 13, 2015. Rodriguez Decl. Ex. 2 p. 8. That email did not indicate that the Dispute Resolution Agreement contained a binding arbitration provision.

Company is providing employees with dispute resolution agreements, which offer the resolution of employment-related disputes through arbitration. You will be provided with a Dispute Resolution Agreement in the attached learning module." Rodriguez Decl. Ex. 2, p. 1-6 (emails from February 27, March 9, March 16, March 23, March 30, April 6) (emphasis added). Nor did the emails inform her that she would be presumed to have reviewed the materials in the learning module. Thus, without evidence that Rightnour ever followed the link contained in those emails, continuing to work after the date that those emails were received cannot constitute the kind of "conduct which evinces the intention of the parties to contract" contemplated under New York law. Register.com, 356 F.3d at 427 (quotation marks omitted); see Alvarez v. Coca-Cola Refreshments, USA, Inc., 914 F. Supp. 2d 256, 258-59 (E.D.N.Y. 2012) (indicating that a party seeking to establish the formation of a contract to arbitrate through unilateral extension of an offer "to an unwitting recipient" is not entitled to the same "rebuttable presumption of receipt to which a party giving notice is entitled").[3]

---

[3] For the same reasons, the defendant's argument that Rightnour had been "performing under the Agreement *for over two months*" before objecting to its terms in April is misguided. Def. Reply in Supp. of Mot. p. 3.

**2.**

Nevertheless, it is undisputed that Rightnour eventually received and reviewed the Dispute Resolution Agreement. See Rightnour Decl. ¶ 4 (indicating that the plaintiff reviewed the Agreement for the first time on April 28, 2015). That Agreement states that "regardless of whether [the employee] submit[s] the acknowledgment, continuing [] employment after receipt of this Agreement constitutes mutual acceptance of the terms of this Agreement by you and the Company." Rodriguez Decl. Ex. A p. 1. Tiffany does not dispute the plaintiff's evidence that, upon review of the Agreement, Rightnour (1) refused to click the "acknowledgment" of the Agreement in the learning module; (2) wrote her supervisor the following day stating that she would not "be completing this module or signing the agreement contained in it," and that she did not intend to waive her right to "pursue the claims raised in the EEOC charge" in court; and (3) met with her attorney, who also notified Tiffany in writing that Rightnour did not intend to be bound by the Agreement. Rightnour Decl. Ex. B; Coleman Decl. Ex. D. It is also undisputed that Rightnour continued her employment with Tiffany at that time.

The question is whether Rightnour's continued employment following her reading of the Dispute Resolution Agreement operates as conclusive and irrebutable evidence of her intent to

14

be bound by it. Tiffany argues that it does. The Court disagrees.

It is true that Rightnour's subjective desire to reject the Dispute Resolution Agreement is insufficient to defend against the formation of a contract because "the existence of a binding contract is not dependent on the subjective intent of the parties." Minelli Constr. Co., Inc. v. Volmar Constr., Inc., 917 N.Y.S.2d 687, 688 (App. Div. 2011) (quotation marks omitted). Rather, "it is necessary to look [] to the objective manifestations of the intent of the parties as gathered by their expressed words and deeds." Id. "Generally, courts look to the basic elements of the offer and the acceptance to determine whether there is an objective meeting of the minds sufficient to give rise to a binding and enforceable contract." Matter of Express Indus. & Term. Corp. v. New York State Dep't of Transp., 715 N.E.2d 1050, 1053 (N.Y. 1999).

There is no carve-out to these principles for employment cases. Under New York law "[a]n employee may consent to a modification to the terms of employment by continuing to work after receiving notice of the modification." Manigault v. Macy's East, LLC, 318 Fed. App'x 6, 8 (2d Cir. 2009) (summary order) (collecting cases). Under those circumstances, the employee's continued employment serves as an "objective manifestation[]" of the employee's intent to be bound.

15

But none of the cases Tiffany relies upon establish that an employee is, notwithstanding other evidence to the contrary, deemed to have consented to an arbitration agreement by virtue of the employee's continued employment. Rather, they stand for the proposition that continued employment following notice of a modification to the terms of employment is -- in the absence of other evidence -- sufficient to constitute objective evidence of consent to the modification. For example, in Beletsis v. Credit Suisse First Boston Corporation, the court held that an employee was bound by an agreement to arbitrate where the employer distributed the policy months before it was to take effect. 2012 WL 2031610, at *1 (S.D.N.Y. Sept. 4, 2002). The employee in that case signed the Compliance Certification that accompanied the new policy, which stated that the employee "agree[s] to comply fully with these policies;" continued to work after the policy became effective; and never informed the employer that she objected to any of the policy's terms. Id. at *1-*2. Chanchani v. Salomon/Smith Barney, Inc., upon which Beletsis relies, also considered employees who signed a receipt form indicating that the employees "will comply with all the Policies and Procedures of the Company." 2001 WL 204214, at *2 (S.D.N.Y. March 1, 2001). In finding that the employees "would still be subject to the later arbitration provision" even if they had not signed the receipt forms, the court stated: "Because the Chanchanis

16

continued to work at Smith Barney even after the promulgation of the Interim Handbook, <u>and never informed Smith Barney that they rejected its terms</u>, they will be deemed to have accepted its provisions." <u>Id.</u> at *3 (emphasis added).

Indeed, none of the cases cited by Tiffany considered a current employee who, when faced with an arbitration agreement, provided a contemporaneous written rejection of the terms of the agreement. <u>See</u> <u>Manigault</u>, 318 Fed. App'x at 7-8 (considering an employee who continued employment and did not opt out of or otherwise reject optional arbitration agreement); <u>Brown v. St. Paul Travelers Cos., Inc.</u>, 331 Fed. App'x 68, 70 (2d Cir. 2009) (summary order) (concluding that the employee's continued employment after receiving written notification of arbitration policy several times over the course of eight years and failing to object "lends force to the presumption that she agreed to be bound by the arbitration policy"); <u>Couch v. AT & T Servs., Inc.</u>, 2014 WL 742093, at *1-*3 (E.D.N.Y. Dec. 31, 2014) (concluding that an employee was bound by an arbitration agreement when the employee received emails informing him of the terms of the agreement and allowing him to opt out and employee failed to do so and did not otherwise object); <u>Brown v. Coca-Cola Enters., Inc.</u>, 2009 WL 1146441, at *7 (E.D.N.Y. April 28, 2009) (considering a plaintiff who received an arbitration agreement, attended an orientation regarding the agreement, and continued

17

employment without rejecting it); see also God's Battalion, 845
N.E.2d at 1266-67 (concluding that the evidence established an
intent to arbitrate where the plaintiff had operated under the
terms of the agreement and alleged breach of the agreement);
Bottini v. Lewis & Judge Co. Inc., 621 N.Y.S.2d 753, 753 (App.
Div. 1995) (concluding that an employee consented to new terms
of employment where the employee initially objected to the new
terms and "took several days off to assess his options," but
then returned to work and complied with the new terms of
employment).

In this case, an employee with a pending claim of
discrimination before the EEOC provided written notice to her
employer, including notice through counsel, that she rejected
the terms of the Dispute Resolution Agreement. To hold that the
plaintiff's written rejection of the Dispute Resolution
Agreement is irrelevant in light of her continued employment
would contravene the directive to consider the "objective
manifestations of the intent of the parties" as expressed by
their "words and deeds." Minelli Constr. Co., 917 N.Y.S.2d at
688 (quotation marks omitted). It would also ignore clear New
York law that "arbitration will not be compelled absent the
parties' clear, explicit and unequivocal agreement to
arbitrate." Dixon, 947 F. Supp. 2d at 399 (quotation marks
omitted). Rightnour's written rejection of the Dispute

18

Resolution Agreement plainly constitutes an "objective
manifestation" of her intent not to be bound by the Dispute
Resolution Agreement.[4]

When Rightnour communicated her intention not to agree to
the arbitration provision, the record does not reflect what, if
any, response she received. Tiffany argues that -- even if

---

[4] Courts of Appeal in other Circuits have come to the same
conclusion in similar cases. See Bailey v. Fed. Nat'l Mortg.
Ass'n, 209 F.3d 740, 742-47 (D.C. Cir. 2000) (concluding under
District of Columbia law that there was no "meeting of the
minds" where an employee continued employment following
distribution of an arbitration policy that indicated that
employees who continued to work would be deemed to have accepted
the policy "as a condition of employment" and would bound by its
terms, where the employee expressed in writing his intention to
reject arbitration and the employer declined to terminate him);
Bayer v. Neiman Marcus Holdings, Inc., 582 Fed. App'x 711, 713-
14 (9th Cir. 2014) (holding under California law that an
employee had not bound himself to a mandatory arbitration
agreement by virtue of continued employment following its
distribution, where employee refused to sign acknowledgement
form and repeatedly notified his supervisors of his refusal to
"agree to or be bound by the Arbitration Agreement"); Lee v. Red
Lobster Inns of Amer., 92 Fed. App'x 158, 162-63 (6th Cir. 2004)
(employee was not bound by arbitration agreement that the
employer indicated was a binding condition of employment, where
employee indicated to her supervisor that she refused to agree
to the policy); but see Berkley v. Dillard's Inc., 450 F.3d 775,
777 (8th Cir. 2006) (concluding under Missouri law that
employee's continued employment after refusing to sign an
arbitration acknowledgment form indicated acceptance of the
arbitration program); Hardin v. First Cash Fin. Servs., Inc.,
465 F.3d 470, 476-78 (10th Cir. 2006) (concluding under Oklahoma
law that employee agreed to be bound by an arbitration agreement
where employee had several months to consider the agreement
before it became binding, and where, after initially objecting
to the agreement, the employee "never renewed her objection"
after the date the agreement went into effect).

Rightnour initially rejected Tiffany's offer -- Tiffany's email response to the email sent by Rightnour's lawyer constituted a counteroffer, which Rightnour accepted by continuing to work thereafter. That email -- sent only to Rightnour's attorney -- stated that that "it is our view that the employees' continued employment after receipt of the Dispute Resolution Agreement constitutes their and the Company's mutual acceptance" of the Dispute Resolution Agreement. Coleman Decl. Ex. D. The email was plainly not a counteroffer. It was simply a restatement of Tiffany's legal opinion that Rightnour had already accepted the Dispute Resolution Agreement -- that is, that an enforceable contract was already in place. See In re Randall's Island Family Golf Ctrs., Inc., 261 B.R. 96, 100 (Bankr. S.D.N.Y. 2001) (holding that since the letter at issue "was not a counteroffer, there was nothing for Gelman to accept through silence or otherwise"). If anything, Rightnour's position could be considered a counteroffer whereby she would continue to be employed without agreeing to Dispute Resolution Agreement.[5] See

---

[5] Indeed, Tiffany may have been concerned about the legality of terminating an employee with a pending claim before the EEOC for refusing to agree to arbitration. See Goldsmith v. Bagby Elevator Co., Inc., 513 F.3d 1261, 1278 (11th Cir. 2008) (concluding that employee's termination upon refusing to sign an arbitration agreement -- which would have applied to the employee's pending charge before the EEOC -- constituted unlawful retaliation, even though all employees were required to sign the relevant arbitration agreement); Bailey, 209 F.3d at 741.

<u>Naylor v. CEAG Elect. Corp.</u>, 551 N.Y.S.2d 349, 351 (App. Div. 1990) (employee's refusal to sign offer to modify terms of employment constituted a rejection and counteroffer). It is plain that Rightnour did not agree to the Dispute Resolution Agreement. Therefore, there was no objective manifestation of an agreement to arbitrate and arbitration should not be compelled.

**CONCLUSION**

For the reasons described above, the defendant's petition for an order compelling arbitration is **denied**. The clerk is directed to close all pending motions.

**SO ORDERED.**

**Dated:     New York, New York**
**           March 6, 2017          __/s/_____**

                                      **John G. Koeltl**
                               **United States District Judge**